**CLINT ESTICK, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2013-0070
Supreme Court of the Virgin Islands
April 15, 2015

MARTIAL A. WEBSTER, SR., ESQ., St. Croix, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(April 15, 2015)

HODGE, *Chief Justice.* Clint Estick appeals the Superior Court's September 12, 2013 judgment and commitment, which adjudicated him guilty of one count of assault in the first degree, two counts of reckless endangerment in the first degree, and one count of unauthorized

possession of a firearm during the commission of a crime of violence. For the reasons that follow, we reverse the judgment relating to one reckless endangerment count but affirm all other convictions, and remand for re-sentencing in compliance with title 14, section 104 of the Virgin Islands Code.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On July 18, 2009, Kaleed Ferdinand was shot while driving near an operating restaurant open to the public on a street in St. Croix. Investigating Officer Jose Silva of the Virgin Islands Police Department ("VIPD") received information regarding a possible suspect in the shooting and a description of the vehicle the suspect drove. Using this information, Officer Silva determined that the owner of the suspected vehicle was Clint Estick. Estick was arrested and charged with one count of assault in the first degree, two counts of reckless endangerment in the first degree, and one count of unauthorized possession of a firearm during the commission of a crime of violence.

Trial began on June 7, 2010. The People first called Rafael Leyton as a witness, who testified that on July 18, 2009, he heard a gunshot on the street near his home. Leyton looked outside his house, saw two vehicles following each other, and then heard three more gunshots. Leyton testified that he saw a purple Honda vehicle following a dark-colored car and that the driver of the Honda had his left hand outside the window of the vehicle, shooting at the dark-colored car in front. Another witness, Kiera Paul, also testified. Paul stated that she was purchasing food from the nearby restaurant on July 18, 2009, when she heard the sound of gun shots and dropped to the floor. Paul testified to seeing a black Dodge Caliber vehicle pass the restaurant as she was lying on the ground.

Next, the People called Ferdinand to testify. Ferdinand stated that on the day of the shooting, he was traveling in a black Dodge Caliber car with two friends, Rasheeda Bell and Derrick Liburd, driving to the beach. Ferdinand testified that he was sitting in the back seat of the Dodge Caliber and saw Estick, driving alone in a blue car, pull behind them at a stop light. Ferdinand described Estick as having a "mad look" on his face. Shortly after turning at the traffic light, Ferdinand heard one gunshot, turned around, and saw Estick with a gun shooting at them while driving about two or three feet behind them. Ferdinand received a gunshot injury

to his right hand. Eventually, Bell drove Ferdinand to the hospital, but he first called Ferdinand's parents to tell them what had happened. Ferdinand maintained that he had no doubt that it was Estick who shot him. On cross-examination, Ferdinand explained that immediately after the shooting — before going to the hospital — Ferdinand, Liburd, and Bell went to the Estick residence to confront the Estick family.

Next, Linda Pascal, a crime scene technician for the VIPD, testified. Pascal responded to the scene of the shooting on July 18, 2009, and collected eight shell casings as well as one bullet from the crime scene. Seven of the eight casings collected had markings which indicated that they were fired from a .45 caliber gun. The casings were found on the road and the projectile was recovered from inside the nearby restaurant. The People's expert, forensic science consultant Maurice Cooper, testified regarding the results of his testing of the shell casings and bullet found at the scene of the crime. Cooper stated that both the casings and bullets were discharged from the same .45 caliber gun.

George Felix, a forensic unit supervisor for the VIPD, also testified. Felix examined the black Dodge Caliber vehicle on August 4, 2009, and noted that it had bullet holes in the back area of the rear hatch door as well as in the rear glass. Felix also found a bullet in the front of the vehicle and a live .380 caliber round in the rear seat.

Alan Lewit, a forensic detective for the VIPD, testified that he was called to the hospital on the night of the shooting and took photographs of Ferdinand, including his gunshot wound. Detective Lewit also photographed the black Dodge Caliber, which had bullet holes in the rear of the vehicle, as well as blood spatter on the rear right side of the vehicle's interior door, and seat area. Detective Lewit stated that the bullet which injured Ferdinand struck the roof at an angle from the rear, indicating that the bullet came from the outside rather than from the inside of the vehicle. Finally, firearms supervisor Karen Stout testified for the prosecution that Estick was not registered to possess or carry a firearm in the Virgin Islands.

Estick's brother, Markeal Smith, testified for the defense. On the night in question, Markeal maintained that Ferdinand's father came to his home and attacked him with a screwdriver, attempting to stab his hand. Markeal testified that he was outside his home washing his car when he first saw his brother James running towards him with Ferdinand chasing him. Markeal went into the home and grabbed a pipe to use as a weapon

because he also saw Bell with a bat and Liburd with a gun. James also testified that Ferdinand hit him with a car-jack on that day. Neither James nor Markeal testified to seeing Estick on the day in question or to knowing where he was at the time of the shooting.

At the close of trial, the jury found Estick guilty on all counts. Estick filed a motion for judgment of acquittal and a new trial. On November 14, 2012, the Superior Court conducted an evidentiary hearing regarding purported newly discovered evidence based upon an affidavit allegedly signed by Ferdinand, recanting his testimony given at the trial. At the hearing, Ferdinand denied signing the affidavit and emphatically denied the accuracy of its contents. Another evidentiary hearing was held on March 19, 2013, at which Ferdinand again denied ever signing the affidavit.

In an order entered on August 19, 2013, the Superior Court denied Estick's motions for judgment of acquittal and for a new trial. The Superior Court entered a judgment and commitment on September 12, 2013, which ordered that Estick be incarcerated for five years for first-degree assault, five years for two counts of reckless endangerment,[1] and seven-and-one-half years for unauthorized possession of a firearm during the commission of a crime of violence. All of the five-year sentences were then ordered suspended, so that Estick would only actively serve the longer sentence on the firearm charge. Estick was also fined $10,000 and ordered to pay court costs. Estick filed a timely notice of appeal on September 4, 2013.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's September 12, 2013 judgment and commitment

---

[1] The Superior Court sentenced Estick to a period of incarceration of five years for both reckless endangerment charges, as opposed to separate five-year sentences for each of the counts, as the judgment and commitment stated: "ORDERED that as to Counts Two and Three, the Defendant be remanded to the care, custody and control of the Director, Bureau of Corrections for a period of five (5) years." (J.A. 37.)

constitutes a final judgment, this Court possesses jurisdiction over Estick's appeal. *Codrington v. People*, 57 V.I. 176, 183 (V.I. 2012) (in a criminal case, written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

An appellant who challenges the sufficiency of the evidence bears a " 'very heavy burden.' " *Charles v. People*, 60 V.I. 823, 831 (V.I. 2014) (quoting *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009)). When this Court considers challenges to the sufficiency of the evidence, " 'we apply a particularly deferential standard of review. Following a criminal conviction, we view the evidence presented at trial in a light most favorable to the People.' " *Id.* (quoting *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009)); *see also Alexander v. People*, 60 V.I. 486, 495 (2014). Therefore, " '[w]e will affirm a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Charles*, 60 V.I. at 831-32. Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's factual findings are only reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

### B. Sufficiency of the Evidence

■ Estick argues that there is insufficient evidence to uphold his convictions because the only evidence presented against him was the testimony of eyewitness Ferdinand. Estick argues that the single eyewitness account of Ferdinand is insufficient evidence because it does not constitute substantial evidence of his guilt.[2] We disagree and address each charge in turn.

#### 1. First-Degree Assault

■ Assault in the first degree, as charged in this case, is defined in part as "assault[ing] another" with "intent to commit murder." 14 V.I.C.

---

[2] We note that Estick's argument lacks merit because this Court has consistently held that the testimony of a single witness is sufficient to support a conviction, even if uncorroborated and contradicted by other testimony. *Percival v. People*, 62 V.I. 477, 487 (V.I. 2015) (quoting *Connor v. People*, 59 V.I. 286, 291 (V.I. 2013)); *Webster v. People*, 60 V.I. 666, 681-82 (V.I. 2014); *Cascen v. People*, 60 V.I. 392, 406 n.4 (V.I. 2014); *Thomas v. People*, 60 V.I. 183, 193 (V.I. 2013); *Francis v. People*, 57 V.I. 201, 211 (V.I. 2012).

§ 295(1). Assault is defined as the use of "any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used." 14 V.I.C. § 292. Murder is defined as the unlawful killing of a human being with malice aforethought. 14 V.I.C. § 921. The evidence presented in this case — when viewed in the light most favorable to the People — was sufficient to satisfy the elements of first-degree assault. Ferdinand testified that Estick was holding a firearm in his hand, which was aimed at the vehicle in which Ferdinand and two others were riding, and that Estick discharged the firearm, with a bullet striking and injuring Ferdinand. From this evidence a rational jury could reasonably conclude that Estick intentionally shot several bullets into Bell's vehicle with the intent to kill one or more of the occupants. *See Simmonds v. People*, 59 V.I. 480, 488-89 (V.I. 2013) (finding sufficient evidence for first-degree assault when the defendant fired shots at the victim); *Phillip v. People*, 58 V.I. 569, 592 (V.I. 2013) (stating that a jury could have convicted the defendant of first-degree assault from evidence that the defendant pointed firearm in a threatening manner with the ability to injure and kill victim).

### 2. *Unauthorized Possession of a Firearm During a Crime of Violence*[3]

██ The evidence was also sufficient to support Estick's conviction for unauthorized possession of a firearm during a crime of violence. Estick argues that this conviction must be reversed because the jury "still does not know what type of gun [Estick] has been charged with having in his possession." (Appellant's Br. 15-16.) However, Estick was convicted of violating 14 V.I.C. § 2251(a)(2)(B), which contains no requirement that the People prove the specific type of firearm of which the defendant was in possession in order to sustain a conviction. Instead, section 2251(a)(2)(B) criminalizes the possession of a dangerous or deadly weapon with intent to use the weapon unlawfully during commission or

---

[3] While Estick was charged with "unauthorized possession of a firearm during the commission of a crime of violence" under 14 V.I.C. § 2251(a)(2)(B), that section — as explained below — does not criminalize "unauthorized" possession, but rather criminalizes mere possession of a dangerous weapon during the commission of a crime of violence. However, Estick does not raise this as an issue and this mischaracterization does not amount to plain error because — even assuming the People were required to prove Estick had "unauthorized" possession of a firearm — there was testimony that Estick was not authorized to possess a firearm in the Virgin Islands.

attempted commission of a crime of violence.[4] First-degree assault is a crime of violence, 23 V.I.C. § 451(e), and, as explained above, there was sufficient evidence to find that Estick committed first-degree assault. *See Powell v. People*, 59 V.I. 444, 458 n.13 (V.I. 2013). Additionally, Ferdinand testified to witnessing Estick in possession of a gun shooting at him, and that a bullet from that gun caused him injury. *Connor v. People*, 59 V.I. 286, 291 (V.I. 2013) (stating that a conviction under section 2251 requires evidence that a defendant merely possessed a deadly weapon with intent to use it unlawfully, as opposed to actually using the weapon). Also, there was evidence corroborating Ferdinand's testimony. Leyton testified to seeing the driver of a purple Honda holding his left hand outside the window of the vehicle, shooting at the dark-colored car it was following. Furthermore, forensic evidence showed that there were numerous bullet holes in Bell's vehicle, as well as blood spatter in the rear right side of Bell's vehicle and multiple shell casings, fired from the same .45 caliber firearm, recovered from the crime scene, all of which establish the existence of a firearm — a deadly weapon — at the scene of the crime. *Connor*, 59 V.I. at 296 (stating that a firearm is a deadly weapon). Thus, the evidence was sufficient to support Estick's conviction under section 2251(a)(2)(B). *Alexander*, 60 V.I. at 512 (evidence sufficient to uphold conviction under section 2251(a)(2)(B) where testimony from victim indicated that defendant possessed a deadly weapon — a knife — while committing a crime of violence).

---

[4] Section 2251(a)(2)(B) states in relevant part:

(a) Whoever

. . . .

(2) with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon shall —

. . . .

(B) if he has previously been convicted of a felony, or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence (as defined in section 2253(d)(1) hereof) shall be fined $10,000 and imprisoned not more than fifteen (15) years, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

### 3. Reckless Endangerment

██ █ Estick was charged and convicted of two counts of reckless endangerment. The first charge (Count Two) was based on the reckless conduct of firing several shots at Ferdinand while driving along a public street. A defendant is guilty of reckless endangerment in the first degree when, under the circumstances evidencing a depraved indifference to human life, he recklessly engages in conduct, in a public place, which creates a grave risk of death to another person. 14 V.I.C. § 625(a). This Court has found there to be sufficient evidence to support a reckless endangerment conviction when a defendant fires a gun in a public street, creating a grave risk of death to those the defendant is firing at. *Augustine v. People*, 55 V.I. 678, 689 (V.I. 2011); *Phillip*, 58 V.I. at 591 (finding sufficient evidence of reckless endangerment when gunshots fired at victim outside, in a public road near a public basketball court in a residential area). Therefore, based on Ferdinand's testimony that while driving on a public road, Estick was firing gunshots at the car that he, Liburd and Bell were driving in, supported by the testimony of Leyton who observed the shooting, there is sufficient evidence to uphold Estick's conviction of reckless endangerment on Count Two.

██ Estick's other reckless endangerment count (Count Three) charged him with recklessly firing several shots in the vicinity of the restaurant, creating a grave risk of death to the patrons of that establishment. Estick's conduct of firing gunshots is sufficient to prove a depraved indifference to human life, which creates a grave risk of death to another person. *Phillip*, 58 V.I. at 591. But the crime of reckless endangerment must occur in a public place. 14 V.I.C. § 625(a). A public place is defined as "a place to which the general public has a right to resort; but a place which is in point of fact public rather than private, and visited by many persons and usually accessible to the public." *Augustine*, 55 V.I. at 689 (emphasis omitted) (quoting 14 V.I.C. § 625(c)(2)).

██ While the evidence is not overwhelming that the nearby restaurant constitutes a public place, given our standard of review — viewing the evidence in the light most favorable to the People — we hold that there was sufficient evidence to sustain this reckless endangerment conviction. *See Freeman v. People*, 61 V.I. 537, 542 n.1 (V.I. 2014). Clearly, Estick's reckless conduct of firing gunshots took place in a public place, the public road. *Augustine*, 55 V.I. at 689. There was also testimony that the

restaurant is directly adjacent to the public road, as the testimony revealed that a bullet was found inside the restaurant. *Id.* at 689-90 (finding sufficient evidence of reckless endangerment when gunshots fired on public road in front of a restaurant with persons present). This is further supported by Paul's testimony that she heard sounds of gunshots and dropped to the floor while purchasing food at the restaurant. Therefore, the evidence was sufficient to uphold Estick's convictions on two counts of reckless endangerment. *Id.*

## C. Prosecutor's Misconduct

■ Estick argues that certain statements made by the prosecution during closing arguments violated his right against self-incrimination under the Fifth Amendment of the United States Constitution. However, Estick did not object to the prosecutor's statements at trial, and therefore we review his argument under a plain error standard of review. *Williams v. People*, 56 V.I. 821, 827 (V.I. 2012). For this Court to reverse the Superior Court for plain error, "there must be an error, that was plain, that affected the defendant's substantial rights." *Webster v. People*, 60 V.I. 666, 672 (V.I. 2014) (quoting *Cascen v. People*, 60 V.I. 392, 413 (V.I. 2014)); *see* V.I.S.CT.R. 4(h), 22(m). But "[e]ven then, this Court will only reverse where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*; *see also Freeman*, 61 V.I. at 544; *Charles*, 60 V.I. at 832.

During closing arguments, the prosecutor stated:

Now, when we talk about blowing smoke, when we talk about all the other things that were said, in other words, to try to discredit, I'm sorry, I was not there. I was not there on July 18, 5 o'clock. I was not there. I was not there. Not [at the restaurant]. Neither was the defense counsel Webster. Neither were any of you, neither were the Judge or any court personnel.

But who was there and who have sworn to tell the truth? And who got up there and told you [he] saw Clint Estick? Not the man who's sitting next to Clint Estick. He wasn't there. But the man in the middle, Clint Estick, is who was there. He was there. That's who was there.

And you know who else was there? Khaleed Ferdinand was there, that's the testimony you have to rely upon and evaluate whether [it's] true or not. That's the testimony you have to rely upon to make a determination as to what happened there.

. . . .

And defense—Defendant's brother, Defendant's other brother, Defendant's family who may be sitting in the back of the courtroom, you know what, none of them can point and can come up here and testify. And those who did testify, not one of them could say they were there. And you know what else, not one of them can say they knew where Clint was.

(J.A. 605-06.)

■■ Estick argues that the prosecutor's statements insinuated that he was guilty because, unlike Ferdinand, Estick did not testify at trial. Here, the prosecutor's statement, particularly the second paragraph above, could be viewed as suggesting that Estick was guilty because he was present at the scene and, unlike Ferdinand, did not testify. However, "[i]mproper remarks by the prosecution during closing arguments are not *per se* grounds for a new trial." *Francis v. People*, 59 V.I. 1075, 1080 (V.I. 2013) (quoting *Mulley v. People*, 51 V.I. 404, 414 (V.I. 2009)). Rather, such prosecutorial misconduct will only warrant reversal if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process in light of the entire proceeding." *Francis*, 59 V.I. at 1080 (quoting *DeSilvia v. People*, 55 V.I. 859, 873 (V.I. 2011)).

■■ Here, even if this statement is considered improper, it did not "so infect[ ] the trial with unfairness" as to deny Estick due process. *Williams v. People*, 59 V.I. 1024, 1040 n.9 (V.I. 2013) (quoting *DeSilvia*, 55 V.I. at 873). This is especially true since the prosecutor's statement went on to reiterate that while Ferdinand was present at the time of the alleged crime, the jury still was required to consider "whether [his testimony was] true or not." The prosecution also went on to essentially summarize the testimony of Estick's family members, accurately stating that there was no testimony indicating where Estick was located at the time of the shooting.[5] Therefore, the prosecutor's statements were not plain error.

---

[5] In his brief, Estick insinuates that the prosecutor's closing arguments were also improper because the prosecutor stated that none of Estick's family members could testify as to his whereabouts, knowing that the defendant was prevented from providing an alibi witness. However, in the seven pages dedicated to the prosecutor's misconduct argument in appellant's brief, Estick only hints towards this argument in two sentences without any further discussion or supporting authority: "[The error] was further reinforced . . . [by] a reference

## D. Fair Trial

Lastly, Estick argues that the Superior Court abused its discretion when it prevented his alibi witness from testifying at trial.[6] Estick filed a notice of alibi witness on the first day of trial, June 7, 2010. Estick's counsel maintained that the defense was not able to initially provide counsel with the name of the alibi witness — Estick could only provide a nickname — and by the time counsel was able to decipher who Estick was referring to, this date was the earliest possible filing. The People opposed this notice of alibi filing as untimely, asserting that it had made a written demand on Estick for notice of any alibi witness on October 15, 2009. The Superior Court found that Estick did not present any good reason for the court to modify the notice requirements, especially given the fact that the People requested this information nearly eight months earlier. Additionally, the Superior Court noted that the identity of the potential alibi witness was not even available for jury selection to be properly presented to the jury during the *voir dire*.

On appeal, Estick argues that the "outcome of the trial would have been different" if the Superior Court had permitted Estick to present his alibi witness. However, this Court has explained that "[i]f a party fails to comply with [the notice requirements], the court may exclude the testimony of any undisclosed witness regarding the defendant's alibi." *Francis v. People*, 57 V.I. 201, 220 (V.I. 2012). This Court has stated that the rule adopted in *Francis* is meant to "reduce prejudice to the opposing party by preventing unfair surprise at trial." *Id.* at 219; *see also Alexander*,

---

to the Appellant's family members who could not take the stand and testify as to the Appellant's whereabouts," (Appellant's Br. 23), and "[t]he prosecutor also reinforced by saying Appellant could not offer anyone else to explain his whereabouts." (Appellant's Br. 26.) We find that Estick did not properly preserve this argument and it is therefore waived. *See* V.I.S.Ct.R. 22(m) ("Issues that . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority[] are deemed waived for purposes of appeal.").

[6] We note that Estick violated this Court's rule by not referring to specific pages of the appendix or places in the proceedings where the issue of his alibi witness was raised and resolved. V.I.S.Ct. R. 22(a)(3) (appellant's brief must contain a statement of the issues presented for review, which must "include a designation by reference to specific pages of the appendix or other specific documentation in the proceedings at which each issue on appeal was raised, objected to, and ruled upon, and a statement of the standard or scope of review for each issue on appeal").

60 V.I. at 500-01.[7] Here, the People made a timely written request for notice of an alibi witness on October 15, 2009. Nearly eight months later — literally on the first day of trial — Estick attempted to give notice of an alibi witness. Estick fails to provide any legitimate argument as to how the Superior Court abused its discretion in deciding that the notice was untimely under these circumstances.

 Estick argues that, despite this, the Superior Court's exclusion of his alibi witness for what amounts to a discovery violation denied him the Sixth Amendment right to present his defense. *See Francis*, 57 V.I. at 223 ("It is well established that the right of a criminal defendant to present a defense is guaranteed by the Sixth Amendment of the United States Constitution.") (citing *Taylor v. Illinois*, 484 U.S. 400, 409, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)). But in this case, the notice of alibi provided that the witness would testify to seeing Estick at a particular location the day before the shooting. While a defendant has the right to present his defense, that right only extends to "the opportunity to present evidence that is relevant, material and favorable to his defense." *United States v. Begay*, 937 F.2d 515, 523 (10th Cir. 1991) (internal quotation marks omitted); *see also United States v. Martinez-Morel*, 118 F.3d 710, 714-15 (10th Cir. 1997) (citing *Roviaro v. United States*, 353 U.S. 53, 63, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957) and *Washington v. Texas*, 388 U.S.

---

[7] In both *Francis* and *Alexander*, this Court reviewed the Superior Court applying the standard outlined in Federal Rule of Criminal Procedure 12.1, which we assumed applied to Superior Court proceedings through Superior Court Rule 7. *See Hansen v. O'Reilly*, 62 V.I. 494, 516 n.23 (V.I. 2015) (noting "our longstanding instruction that 'fleeting references' in opinions to issues that were never raised or discussed should not be cited as controlling authority" (quoting *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 984 n.9 (V.I. 2011))). But recently, this Court questioned whether Superior Court Rule 7 is a valid exercise of rulemaking authority "given that Congress provided in section 21(c) of the Revised Organic Act that '[t]he rules governing the practice and procedure of the courts established by local law . . . shall be governed by . . . *the rules promulgated by those courts.*' " *Percival v. People*, 62 V.I. 477, 485 n.1 (V.I. 2015) (quoting 48 U.S.C. § 1611(c)) (emphasis in original); *accord Gov't of the V.I. v. Connor*, 60 V.I. 597, 602 (V.I. 2014). Yet regardless of the validity of Superior Court Rule 7, this Court's holdings in *Francis* and *Alexander* addressing a defendant's duty to provide notice of an alibi witness to the People when requested remain controlling authority until this Court sets those rulings aside. In this case, neither Estick nor the People ask us to revisit the rule adopted and applied in *Francis* and *Alexander*, and therefore we decline to do so here. *See Banks*, 55 V.I. at 984 n.9 (where "the parties [did not] expressly request that this Court exercise its inherent power to adopt a different rule, . . . this Court is not inclined to do so *sua sponte* without receiving the benefit of briefing by the parties").

14, 16, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)). Therefore, the Superior Court did not violate Estick's right to present his defense by excluding irrelevant testimony that he failed to disclose until the day of trial.

## E. Double Jeopardy and Section 104

■ Although Estick has not challenged his sentence on appeal, we have consistently held that "illegal sentences, by their very nature, fulfill the requirements of the plain error test in that they both affect a criminal defendant's substantial rights and 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Charles*, 60 V.I. at 842 (quoting *Murrell v. People*, 54 V.I. 327, 336 (V.I. 2010)). Furthermore, Estick's right under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution was raised and addressed by the Superior Court in its memorandum opinion.[8] Consequently, this Court may review the legality of the Superior Court's sentence *sua sponte*.

### 1. *Double Jeopardy*

■ This Court normally does not address double jeopardy where section 104 is implicated, because section 104 provides greater protections than the Double Jeopardy Clause. *Rawlins v. People*, 58 V.I. 261, 275-76 (V.I. 2013); *Galloway v. People*, 57 V.I. 693, 712 (V.I. 2012). But the Double Jeopardy Clause protects against multiple punishments for a single offense, unless the Legislature has clearly intended to permit cumulative punishment.[9] *Castillo v. People*, 59 V.I. 240, 285 (V.I. 2013) (Hodge, C.J., concurring). Whereas section 104 dictates that despite the

---

[8] The double jeopardy prohibition found in the Fifth Amendment to the U.S. Constitution applies to the Virgin Islands by virtue of Section 3 of the Revised Organic Act. 48 U.S.C. § 1561.

[9] Although this Court has described section 104 as providing greater protections than the Double Jeopardy Clause, *see Tyson v. People*, 59 V.I. 391, 427 (V.I. 2013), we emphasize that

> Section 104 and the Fifth Amendment's Double Jeopardy Clause are related, but not the same. The Double Jeopardy Clause protects criminal defendants against multiple prosecutions or punishments for a single offense — unless the Legislature has clearly intended to permit cumulative punishment. Section 104, on the other hand, speaks to multiple punishments for the same act. *Compare* U.S. CONST. amend. V (providing that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb") (emphasis added), *with* 14 V.I.C. § 104 (noting that an act, though violative of multiple provisions of the Code, may be punished under only one). The distinction, then, and one which must be kept clear, is between a singular offense and a singular act.

fact that an individual can be charged and found guilty of violating multiple provisions of the Virgin Islands Code arising from a single act or omission, that individual can ultimately be punished for only one offense. *Tyson v. People*, 59 V.I. 391, 428 (V.I. 2013); *Galloway*, 57 V.I. at 712 (quoting *Williams*, 56 V.I. at 832).

Here, Estick was charged and convicted on two counts of reckless endangerment. One count (Count Two) was based on the reckless conduct of firing several shots at Ferdinand while driving along a public street. The other reckless endangerment count (Count Three) charged Estick with recklessly firing several shots in the vicinity of the restaurant, creating a grave risk of death to the patrons of that establishment. Thus, if these charges are based on the same criminal act, or constitute one "unit of prosecution," then Estick's two convictions violate double jeopardy by punishing him twice for the same offense. *Bell v. United States*, 349 U.S. 81, 83, 75 S. Ct. 620, 99 L. Ed. 905 (1955); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). In this case, we conclude that Estick's double jeopardy rights were violated by the multiple convictions for reckless endangerment.

██ Here, the proper inquiry is what "unit of prosecution" has the Legislature intended as the punishable act under the reckless endangerment statute, section 625(a) of title 14. *Bell*, 349 U.S. at 83; *see also State v. Adel*, 136 Wn.2d 629, 965 P.2d 1072, 1074 (1998). "When the Legislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime." *Adel*, 965 P.2d at 1074; *see also Bell*, 349 U.S. at 83-84. The unit of prosecution for a crime may be an act or a course of conduct. *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 225-26, 73 S. Ct. 227, 97 L. Ed. 260 (1952).

In this case, Estick was charged with only one unit of prosecution: firing several shots at Ferdinand while driving on a public road, in the vicinity of the restaurant. Ferdinand testified that he heard over four or five gunshots. The VIPD crime scene technician testified that she

---

*Castillo v. People*, 59 V.I. 240, 284 n.1 (V.I. 2013) (Hodge, C.J., concurring) (emphasis omitted). Because Estick's two reckless endangerment convictions involve him being punished twice for the same offense — as opposed to twice for the same act — we analyze this issue under the double jeopardy clause rather than under section 104.

collected eight shell casings as well as one bullet from the single crime scene. There is no indication that the gunshots were prolonged over a long period of time or distance, or were spaced far apart in location. Nevertheless, the Superior Court found that it was "inconsequential if the defendant is charged with only one count or multiple counts for risking the lives of a number of people." (J.A. 27.) However, being charged with multiple counts of the same criminal act is consequential because it impacts Estick's double jeopardy rights.

The reckless endangerment statute in the Virgin Islands speaks in terms of a person recklessly engaging in conduct, indicating the Legislature has prescribed that the conduct creating a substantial risk of death or serious injury is the focus of the statute, not the effect of the defendant's conduct on another person or persons. *See State v. Ramsey*, 903 S.W.2d 709, 713 (Tenn. Crim. App. 1995); *State v. Graham*, 153 Wn.2d 400, 103 P.3d 1238, 1245 (2005) (en banc) (Madsen, J., dissenting). Furthermore, this Court has previously indicated that a reckless endangerment charge may be established based on the conduct of the defendant in a place where the public has the right to be, and the charge does not hinge on the naming of a particular or finite number of endangered persons. *Tyson*, 59 V.I. at 417; *Augustine*, 55 V.I. at 689; *Mulley*, 51 V.I. at 412. Additionally, this Court has upheld a single reckless endangerment conviction although a defendant endangered many people by opening gunfire on a public road — crowded with tourists — during a burial procession. *Tyson*, 59 V.I. at 418. Similarly, the facts of this case militate toward a conclusion that only one reckless endangerment offense occurred, the firing of gunshots on the street near restaurant.

While the firing of multiple shots in a public place will not always constitute only one act of reckless endangerment under our statute, in the instant case we conclude that the two reckless endangerment convictions violated Estick's double jeopardy rights by punishing him twice for the same offense. Accordingly, we remand for the Superior Court to dismiss one of the reckless endangerment charges and vacate the conviction on that count.

### 2. Section 104

Title 14, section 104 of the Virgin Islands Code provides that notwithstanding the fact that an individual can be charged and convicted

of violating multiple provisions of the Virgin Islands Code, an individual may only be punished for one of the offenses arising out of a single act. *Williams*, 56 V.I. at 832-34. If more than one conviction is based on a single act, the trial court must "stay the execution" of punishment for all but one of those convictions. *Charles*, 60 V.I. at 843. In this case, apart from the firearms charge, Estick was convicted and sentenced for assault in the first degree and two counts of reckless endangerment. All of these three charges are based on the same single act of Estick firing shots at Ferdinand in a public street near the restaurant. Therefore, the Superior Court should have stayed the execution of punishment for all but one of those three convictions.

 However, the Superior Court merely suspended the sentences for the assault and the two reckless endangerment convictions, so that Estick would only serve the longer sentence on the firearm charge. Merely suspending the sentences, and not staying the execution of the sentences, violates section 104. Section 104 acts to ensure that a defendant's stayed convictions are not used against him for any purpose unless the unstayed conviction is reversed or vacated, and the stay on remaining convictions is thereafter lifted to allow imposition and execution of sentence on that charge. *Williams*, 56 V.I at 834 n.9. Thus, when a defendant serves the sentence on the remaining offense, the other stayed offenses must be dismissed. *Id.*

The Superior Court's failure to heed section 104, even where the court provided for the sentences to run concurrently, is a plain error that warrants remand. *Id.* at 832-34. Therefore, in addition to dismissing one of the two reckless endangerment charges and vacating the conviction on that count, on remand the Superior Court should re-sentence Estick in conformance with section 104 by staying the execution of sentence for either the first-degree assault charge or the remaining reckless endangerment charge.

### III. CONCLUSION

The evidence offered at trial was sufficient to support all of Estick's convictions. Also, no plain error occurred regarding the prosecutor's statements during closing arguments, and the Superior Court did not abuse its discretion in deciding that Estick's motion to present an alibi witness was untimely.

However, Estick's double jeopardy rights were violated because the two convictions of reckless endangerment punished him twice for the same offense. Furthermore, the Superior Court violated section 104 by suspending and not staying the execution of Estick's sentence on either the first degree assault conviction or the remaining reckless endangerment conviction. Accordingly, we remand for the Superior Court to dismiss one count of reckless endangerment, vacate the conviction on that count, and re-sentence Estick in conformance with title 14, section 104 of the Virgin Islands Code.