**ALEJANDRO VELAZQUEZ, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2015-0080

Supreme Court of the Virgin Islands

August 22, 2016

313

KELE ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI,
 *Attorney for Appellant.*

SAMUEL A. WALKER, ESQ., Assistant Attorney General, St. Croix, USVI;
 MICHAEL MOURIDY, ESQ., Assistant Attorney General, St. Thomas,
 USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

### (August 22, 2016)

HODGE, *Chief Justice*. Alejandro Velazquez appeals from the Superior Court's August 21, 2015 judgment and commitment, adjudging him guilty of eight criminal offenses. For the reasons that follow, we affirm.

## I. BACKGROUND

On Sunday, June 17, 2012, Wilberto Bennett traveled to a local bar on St. Croix at around 8:30 in the evening to celebrate Father's Day. After drinking two beers and playing a few games of pool, Bennett decided to head home around 12:30 a.m. the following morning. When he exited the bar and began walking into the parking lot, he encountered his friend Hector Osorio and offered to give him a ride home. Osorio accepted the offer and told Bennett that he would remain where he was while Bennett retrieved and brought the car around to exit the parking lot. After taking just a few steps away from Osorio, Bennett saw someone walking swiftly in Osorio's direction, and subsequently heard Osorio exclaim "hey, Alejandro, how you doing?" At that moment, Bennett turned and glanced in Osorio's direction to see Velazquez raise his hand holding a firearm and fire one shot into Osorio's outstretched right hand. In shock at what he had witnessed, Bennett froze, and he and Velazquez stared at each other "face-to-face." Immediately thereafter, Velazquez raised the firearm and shot Bennett in the back.

While feeling the heat from the bullet in his back and attempting to run, Bennett felt his knees get weak and fell to the ground, where he pretended to be dead. Moments later, he heard footsteps approach him, and opened his eyes to see Velazquez walking in his direction. Velazquez took his right foot and pushed Bennett in the stomach area, as Bennett continued to play dead. Velazquez then shot Bennett two more times, once in the buttocks, and another in the back. Bennett reopened his eyes and saw Velazquez run across the street to a nearby trash receptacle, stash the weapon within it, and then run away until Velazquez was no longer in his sight.

Several minutes later, Virgin Islands Police Officer Juan Concepcion approached Bennett and asked him to name the person who shot him. Still alert, Bennett informed Officer Concepcion that it was a man named

315

Alejandro Gonzalez — not Velazquez — who shot him, and told the officer where the shooter lived, the color and style of his home, and the description of a scar on his face. Despite giving Officer Concepcion the incorrect last name, which Bennett explained during trial was simply a misstatement caused by him knowing another man named Alejandro Gonzalez, Officer Concepcion went to the described home and met and interviewed Velazquez at that address. Officer Concepcion noticed the scar on Velazquez's face, left the home with a passport photograph given to him by Velazquez, and took the photograph to the emergency room where Bennett positively identified Velazquez as the person who shot him and Osorio in the parking lot. Bennett also testified that he was able to describe Velazquez's facial scar because months earlier, he and Velazquez had gotten into a fist fight in which he injured Velazquez's face, causing Velazquez to warn him to "watch [his] back." Evidence at trial ultimately established that Velazquez is not licensed to possess a firearm or ammunition on St. Croix, and is not a firearm or ammunition dealer or manufacturer.

Velazquez was arrested and subsequently charged in an eight count information with: one count of first-degree attempted murder in violation of title 14, sections 922(a)(1) and 331(1) of the Virgin Islands Code; one count of first-degree assault in violation of section 295(1); one count of third-degree assault in violation of section 297(2); two counts of unauthorized possession of a firearm during the commission of a crime of violence in violation of section 2253(a); one count of unlawful possession of ammunition in violation of section 2256(a); one count of first-degree reckless endangerment in violation of section 625(a); and one count of failure to report a firearm obtained outside the Virgin Islands in violation of title 23, section 470(a). After a four-day jury trial, Velazquez was convicted on all charges.[1] He subsequently filed a notice of appeal with

_____

[1] Velazquez was charged and convicted of third-degree assault for shooting Osorio in the hand. Notwithstanding that conviction, in its August 21, 2015 judgment and commitment, the Superior Court adjudicated him guilty of *first-degree assault*, instead of third-degree assault, under title 14, section 297(2). Because an amended judgment and commitment correcting this scrivener's error would not change the actual sentence imposed, the Superior Court may issue an amended judgment and commitment that can be substituted, *nunc pro tunc*, for the August 21, 2015 judgment and commitment. *See John v. People*, 63 V.I. 629, 636 n.1 (V.I. 2015) (collecting cases); *Cruces v. State*, 452 S.W.2d 180, 182 (Mo. 1970) (explaining that a *nunc pro tunc* order was appropriate where "the court erroneously caused the formal judgment entry to show . . . that the conviction was for murder in the second degree instead of

the Superior Court on October 19, 2015.[2]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law." 48 U.S.C. § 1613a(d); *see also* 4 V.I.C. § 32(a) (granting this Court jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court"). The Superior Court's August 21, 2015 judgment and commitment constitutes a final order, and as such, this Court has jurisdiction over this appeal. *See Percival v. People*, 62 V.I. 477, 483 (V.I. 2015).

---

manslaughter which the jury's verdict and the court's minutes show" (citation and internal quotation marks omitted)).

[2] Velazquez filed an untimely notice of appeal with the Superior Court on October 1, 2015, after the filing deadline date of September 21, 2015 — the day that was 30 days after the entry of the judgment and commitment, as extended by operation of Virgin Islands Supreme Court Rule 16(b). *See* V.I.S.CT.R. 5(b)(1) ("In a criminal case, a defendant shall file the notice of appeal in the Supreme Court within 30 days after the entry of (i) the judgment or order appealed from or (ii) a notice of appeal by the Government."); V.I.S.CT.R. 16(b) (providing that "in computing any period of time prescribed or allowed by these Rules, by an order of the Court, or by any applicable statute, the day of the act [or] event ... from which the designated period of time begins to run shall not be included," and that "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the Clerk of the Supreme Court inaccessible, in which event the period runs until the next day which is not one of the aforementioned excluded days"). Subsequently, on October 8, 2015, Velazquez moved the Superior Court to permit him to file his notice of appeal out of time. V.I.S.CT.R. 5(b)(6) ("Upon a showing of excusable neglect or good cause, the Superior Court may — before or *after* the time has expired, with or without motion and notice — extend the time for filing a notice of appeal for a period not to exceed 30 days after the expiration of the time otherwise prescribed by this subdivision ...." (emphasis added)); *see also Rainey v. Hermon*, 55 V.I. 875, 879 (V.I. 2011) (deeming a late filed notice of appeal as timely after Superior Court granted an extension of time). Eleven days later, on October 19, 2015, the Superior Court granted Velazquez's motion, and on that same date, Velazquez unnecessarily refiled his notice of appeal, as his original October 1, 2015 filing was approved and did not extend beyond the 30 additional days to file. Lastly, although Velazquez mistakenly filed his notice of appeal in the Superior Court, rather than this Court, we treat his inappropriate filing as having been properly filed as of the date filed in the Superior Court, thus making his appeal timely. V.I.S.CT.R. 5(b)(7) ("If a notice of appeal is mistakenly filed in the Superior Court, the Clerk of the Superior Court shall note thereon the date on which it was received and electronically transmit it to the Clerk of the Supreme Court. Such notice shall be deemed filed in the Supreme Court on the date so filed in the Superior Court.").

■ ■ When reviewing the sufficiency of the evidence to support a conviction, " 'we must view the evidence in the light most favorable to the People, and affirm the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Webster v. People*, 60 V.I. 666, 678-79 (V.I. 2014) (quoting *Cascen v. People*, 60 V.I. 392, 401 (V.I. 2014)). Additionally, this Court will generally not invalidate a jury instruction "unless it is shown that the instruction substantially and adversely impacted the constitutional rights of the defendant and impacted the outcome of the trial." *Prince v. People*, 57 V.I. 399, 404 (V.I. 2012) (citation omitted). When there was a timely objection to a final jury instruction, we review the decision to overrule such objection for abuse of discretion. *Id.* (citing *Gov't of the V.I. v. Fonseca*, 274 F.3d 760, 765, 44 V.I. 336 (3d Cir. 2001)). But when, as here, the accused fails to object to a jury instruction given by the Superior Court, we review the granting of such instruction for plain error. *Id.* (citations omitted).

## B. Sufficiency of the Evidence

Velazquez contends that because he was charged with failing to report a firearm that he allegedly possessed early on a Monday morning, the evidence presented at trial was insufficient to support his conviction because title 23, section 470 fails to provide for a mechanism that would enable him to immediately report obtaining a firearm or ammunition to the Commissioner of Police at that time, since Sundays are legal holidays pursuant to title 1, section 171.[3] He further contends that if there was no such reporting mechanism in place, the evidence could not have been sufficient to prove that he unlawfully possessed a firearm, unlawfully possessed ammunition, committed attempted murder, committed first-degree assault, or committed reckless endangerment.

Title 1, section 171 of the Virgin Islands Code provides that "[e]very Sunday" is a legal holiday in the Virgin Islands, and that "[w]henever" a

---

[3] Despite the fact that the crimes Velazquez was convicted of took place at approximately 12:30 a.m. on Monday, June 18, 2012, and not on Sunday, June 17, 2012, as would be required to claim an excuse for failure to act on a legal holiday, for the sake of defendant's argument and clarification purposes only, we review the sufficiency of the evidence supporting the defendant's conviction under title 23, section 470 as if the criminal acts had been performed on a Sunday, because, as discussed herein, the legal holiday argument is irrelevant to our decision.

statute provides that an act "be performed upon a particular day, which . . . falls upon a [Sunday], that act may be performed upon the next business day with the same effect as if it had been performed upon the day appointed." Title 23, section 470(a) of the Virgin Islands Code provides that:

> Any person other than a licensed dealer, who purchases or otherwise obtains any firearms or ammunition from any source within or outside of the Virgin Islands shall report such fact in writing or in person to the Commissioner *immediately* after receipt of the firearm or ammunition, furnishing a complete description of the firearm or ammunition purchased or otherwise obtained. He shall also furnish his own name, address, date of birth and occupation.

(Emphasis added.)

 When a party contends that there exist two conflicting statutes, and uncertainty lingers, casting doubt on which statute is controlling, "we emphasize that . . . 'the more specific statute takes precedence over the more general one, unless it appears the Legislature intended for the more general to control.' " *Rohn v. People*, 57 V.I. 637, 647 (V.I. 2012) (quoting *V.I. Pub. Servs. Comm'n v. V.I. WAPA*, 49 V.I. 478, 485 (V.I. 2008)).

 Although Velazquez contends that title 1, section 171 permitted him to report the firearm on the following business day, it is unquestionable that title 23, section 470 represents the more specific statute with respect to firearm reporting, and thus, controls. It is clear that the Legislature's use of the word "immediately" meaning " 'instantly; at once' or 'with no object or space intervening' " clearly contradicts any alleged intent to permit reporting of a firearm on the next business day following a Saturday, Sunday, legal holiday, or other non-business day. *United States v. Mike*, 655 F.3d 167, 175, 55 V.I. 1349 (3d Cir. 2011) (quoting WEBSTER'S UNABRIDGED DICTIONARY 957 (2d ed. 1998)). Moreover, section 470's legislative history provides that in 1996, the Twenty-First Legislature of the Virgin Islands amended a previous version of this statute to substitute "immediately" for the words "within 24 hours," underscoring the Legislature's clear intent to emphasize the importance of reporting weapons and ammunition to authorities swiftly. *See* Act No. 6123, §§ 1, 2 (V.I. Reg. Sess. 1996); *see also United States v. McKie*, 112 F.3d 626, 632, 36 V.I. 367 (3d Cir. 1997) (noting that the "legislature

wanted to close the loophole created by the twenty-four hour grace period" by referring to statements of several senators made at the August 29, 1996 hearing on Bill No. 21-0219, to amend Title 23, Section 470 of the Virgin Islands Code.).

■ "To sustain a conviction under section 470 there must be evidence . . . [that a person] fail[ed] to [immediately] report the purchasing or obtaining of [a firearm or] ammunition." *Sonson v. People*, 59 V.I. 590, 597 (V.I. 2012). In its pre-1996 form, proof of duration in section 470 was an affirmative defense to be raised by the defendant to challenge a conviction under both section 470 and unauthorized use of a firearm in violation of title 14 section 2253. *See McKie*, 112 F.3d at 631. Following its revision, the Virgin Islands Legislature "accomplished its objective" of closing loopholes to firearm possession, by "eliminating the use of section 470['s duration requirement] as a viable affirmative defense in the vast majority of cases by collapsing the time period for reporting into nothing." *Mike*, 655 F.3d at 175. As a result, once the prosecution proved in the instant case that Velazquez was in possession of a firearm, was not authorized to carry a firearm and ammunition, and proved that he did not report the firearm to the Commissioner of Police, Velazquez was required to prove that he satisfied the immediacy requirement. *See McKie*, 112 F.3d at 630 (noting that when balancing the " 'opportunities for knowledge' " as required for affirmative defenses under *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), "when a firearm was obtained is almost always exclusively within the knowledge of the defendant").

■ Taking these factors into consideration, we find Bennett's testimony at trial that he witnessed Velazquez carry a firearm and shoot ammunition, clearly established that Velazquez had possession of both a firearm and ammunition. Although not required to do so, the People presented additional testimony establishing that Velazquez was not a licensed dealer of either form of contraband in the Virgin Islands. Thus, Velazquez was required to immediately report receipt of the firearm and ammunition to the Commissioner of Police in person or in writing. He did not do so, and a reasonable jury could have concluded that Velazquez did not immediately report because, *inter alia*, he stashed the weapon in a nearby trash receptacle. Furthermore, Velazquez presented no evidence that he met the immediacy requirement by, for example, writing a letter and dropping it off at the local police station or in the mail, or presenting

himself to appropriate authorities to report that he had acquired the firearm.

Accordingly, we conclude that there was sufficient evidence to support Velazquez's conviction for failure to report receipt of a firearm and ammunition under section 470. Our conclusion negates the need to address Velazquez's claim that because there was no mechanism in place for him to report receipt of a firearm and ammunition on a holiday, his convictions for unlawful possession of a firearm and ammunition, attempted first-degree murder, first-degree assault, and reckless endangerment should all be reversed. Nevertheless, even if we were to consider, as we have, the sufficiency of the evidence on those additional charges, we would affirm, as the evidence clearly established beyond a reasonable doubt that Velazquez was an unlicensed carrier of a firearm and ammunition, that he discharged that firearm in a public place and in an immediate vicinity wherein other members of the public were endangered, and that he intentionally shot both Bennett and Osorio, shooting Bennett in a deliberate and premeditated manner, thus proving attempted first-degree murder as discussed below. *See, e.g., Augustine v. People*, 55 V.I. 678, 689-90 (V.I. 2011) (discussing sufficiency of evidence supporting a conviction for reckless endangerment, based on analogous facts); *Woodrup v. People*, 63 V.I. 696, 708-09 (V.I. 2015) (discussing sufficiency of evidence supporting conviction for first-degree murder accomplished using firearm based on analogous facts, and citing other similar cases).

██ ██ Velazquez also argues that this Court should reverse his conviction for attempted first-degree murder because the People failed to admit sufficient evidence proving premeditation. As this Court has previously recognized, "[a]lthough the mental processes involved must take place prior to the killing, a brief moment of thought may be sufficient to form a fixed, deliberate design to kill." *Nicholas v. People*, 56 V.I. 718, 734 (V.I. 2012) (internal quotation marks and citation omitted). Moreover "it is not the length of time or reflection that determines whether an act of murder was premeditated, but rather it is the act of deliberation before the murder." *James v. People*, 60 V.I. 311, 327 (V.I. 2013) (citation omitted). Even without considering the fact that a jury could have reasonably inferred from the previous altercation between Bennett and Velazquez that Velazquez intended to kill Bennett, the circumstances of the firing the weapon itself showed a deliberate and premeditated attempt to kill.

Bennett testified that after Velazquez shot him once, Velazquez then walked in his direction and fired two more rounds into Bennett's buttocks and back. This evidence of firing an additional two rounds alone was sufficient to support a finding of guilty of first degree attempted murder. *Woodrup*, 63 V.I. at 708-09; *see also Simmonds v. People*, 59 V.I. 480, 487 (V.I. 2013) (concluding that sufficient evidence existed where the accused moved closer to the victim to fire additional gunshots "far more likely to result in death"); *Codrington v. People*, 57 V.I. 176, 190 (V.I. 2012) (concluding that sufficient evidence existed where the accused shot the victim once, began to retreat, and then returned to shoot the victim an additional time).

■ ■ Lastly, Velazquez contends that his convictions should be reversed because: (1) Bennett positively identified him while Bennett was under stress, (2) Bennett initially identified his shooter as Alejandro Gonzalez, and (3) Bennett's and Osorio's testimony conflicted. We have repeatedly observed that " '[t]he testimony of one witness is sufficient to prove any fact,' " and that " '[a] conviction may be sustained on the testimony of a single witness or victim, even when other witnesses may testify to the contrary.' " *Francis v. People*, 57 V.I. 201, 236 (V.I. 2012) (quoting 29A AM. JUR. 2D *Evidence* § 1363); *accord Estick v. People*, 62 V.I. 604, 612 n.2 (V.I. 2015); *Thomas v. People*, 60 V.I. 183, 193 (V.I. 2013); *Connor v. People*, 59 V.I. 286, 290 (V.I. 2013). Further, "[t]he weight of the evidence is not determined by the number of witnesses who testify for either side, but the quality of their testimony" and, as such, is an assessment of credibility. *Francis*, 57 V.I. at 236 (citation and internal quotation marks omitted). Certainly, this Court is not at liberty to substitute its credibility determinations for those of the jury. *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009). That is, unless the conviction is "predicated on 'wholly uncorroborated testimony of incredible dubiosity,' " and such circumstance is not evinced in this instance. *Rivera v. People*, 64 V.I. 540, 557 (V.I. 2016) (quoting *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007)). Because the jurors in this case were presented with the facts surrounding Bennett's identification and listened to the testimony of both Osorio and Bennett, it was for them to assess the veracity and credibility of the testimony, and the jurors reasonably concluded — based on that testimony — that Velazquez was guilty beyond a reasonable doubt. As a result, we do not upset the convictions on any of the charges.

## C. Jury Instructions

As a final argument, Velazquez contends that the trial court committed plain error by instructing the jury on first-degree attempted murder without also giving an instruction on the lesser-included offense of attempted second-degree murder.

Because Velazquez failed to request a lesser-included instruction, and did not object to the instructions given at trial, we review only for plain error. *See Prince*, 57 V.I. at 405. For this Court to find plain error there must be " 'an error, that was plain, that affected the defendant's substantial rights.' " *Estick*, 62 V.I. at 616 (citation omitted) (quoting *Webster*, 60 V.I. 672). "But '[e]ven then, this Court will only reverse where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (citations omitted) (quoting *Webster*, 60 V.I. 672). Moreover, any claim that the trial court gave an "improper instruction will rarely justify reversal of a criminal conviction" where a party fails to preserve a charging error by objecting at trial. *Prince*, 57 V.I. at 405 (citing *Elizee v. People of the V.I.*, 54 V.I. 466, 476 (2010)).

 Title 5 section 3635 of the Virgin Islands Code provides that, "[w]hen it appears that the defendant has committed a crime, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of those degrees only." *See also Phipps v. People*, 54 V.I. 543, 550-51 (V.I. 2011) ("For a jury to convict a defendant on a lesser included offense that is not charged in the information, there must be 'a reasonable ground of doubt' for the jury to find that the defendant committed the lesser offense but not the higher offense." (quoting 5 V.I.C. § 3635)). As a result, " '[a] jury instruction must contain a lesser included offense only if the evidence adduced at trial could support a guilty verdict on either charge.' " *McIntosh v People*, 57 V.I. 669, 683 (V.I. 2012) (quoting *Gov't of the V.I. v. Knight*, 989 F.2d 619, 632, 28 V.I. 249 (3d Cir. 1993)); *accord Codrington*, 57 V.I. at 194.

 We conclude that the Superior Court did not commit plain error in this case by failing to give a lesser included instruction on attempted second-degree murder. Bennett's testimony that he had a previous altercation with Velazquez, and that Velazquez fired one round followed by a brief intermission before standing over him and discharging two more rounds into his body made the first-degree attempted murder charge

323

fully appropriate; and, because there is insufficient evidence indicating any other kind of attempted killing, this Court finds no plain error in the Superior Court's decision to not give an instruction on second degree attempted murder.

## III. CONCLUSION

Because the People presented sufficient evidence to convict Velazquez on all charges, and because the Superior Court did not commit plain error in failing to instruct on attempted second-degree murder, we affirm the Superior Court's August 21, 2015 judgment and commitment.