# CABA ALPHONSO WOODRUP, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Criminal No. 2013-0010

Supreme Court of the Virgin Islands

October 20, 2015

697

701

KELE ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

KIMBERLY L. SALISBURY, ESQ., JENNIFER L. AUGSPURGER, ESQ., Assistant Attorneys General, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(October 20, 2015)

CABRET, *Associate Justice.* Caba Woodrup appeals his convictions in the Superior Court for murder, assault, reckless endangerment, and

unauthorized possession of a firearm during the commission of a crime of violence. For the reasons that follow, we affirm his convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Patrick Smith was shot and killed while walking in the Paul M. Pearson Gardens Housing Community on St. Thomas with his girlfriend, Leshelle Gumbs, on April 25, 2010. That evening, Officer Corine Daniel took a statement from Gumbs. In this April 25, 2010 statement, she told Officer Daniel that she was walking in the area earlier that evening when a man she had never seen before accosted her and "started grabbing [her] up." She left, but returned an hour later with Smith. When Gumbs and Smith came across the man who accosted her, the man called out to Gumbs, Gumbs and Smith responded, and the man "pulled out a gun and started firing." Gumbs said that the shooter fired "between four and six shots," and described him as black, of medium build, about five feet, eleven inches tall, with a "big belly," shoulder length braids, and no facial hair, wearing a white flannel shirt, blue basketball pants, and a blue baseball hat.

Corporal Mario Stout took another statement from Gumbs the following day. In this April 26, 2010 statement, she said that Smith and the shooter were not arguing before the shooting, and provided more information about Smith, but did not describe the shooter or provide any more information about him.

That same day, Detective A. George took a statement from Austin Callwood, who at that time was the Director of Enforcement for the Virgin Islands Department of Planning and Natural Resources. Callwood told George that the night before, at 9:05 p.m., "a young man and a young woman pass[ed] right in front of [his] vehicle," followed immediately by another man who pulled out a handgun and fired five or six bullets at the first man. Callwood said that after the victim was shot, he ran to the passenger side of Callwood's vehicle, while the shooter walked past the driver side of his vehicle, crossed in front of his vehicle and to the other side of the street, and walked behind one of the buildings in Pearson Gardens. Callwood immediately called emergency services and attempted to aid Smith until an ambulance arrived. Like Gumbs, Callwood described the shooter as black, approximately five feet, eleven inches tall, stocky, with braids, wearing a dark shirt with horizontal stripes that may

have been red and white. But Callwood was unable to identify the shooter in several binders of mugshots police showed him.

On May 13, 2010, Gumbs spoke to Detective Jose Allen and provided a third statement regarding the shooting. In this May 13, 2010 statement, Gumbs again described the events leading up to the shooting, but this time identified the shooter as a man who went by the nickname "Maka" or "Bombom,"[1] and again described him and what he was wearing on the day of the shooting. Gumbs also stated that she knew where this man lived at the time of the shooting, but she heard that he left the island immediately after the shooting. On June 29, 2010, Detective Allen again met with Gumbs and asked her to examine a group photo of several people, including Woodrup, to determine if the shooter was among them. Gumbs circled Woodrup in the photo, wrote his nicknames next to the photo, and signed and dated it.

More than two years later, on August 3, 2012, the Fulton County Sheriff's Office arrested Woodrup near Atlanta, Georgia, for a different offense and later extradited him back to the Territory. The People of the Virgin Islands then filed an August 6, 2012 information against Woodrup, charging him with first-degree murder, second-degree murder, first-degree assault, third-degree assault, first-degree reckless endangerment, and several counts of unauthorized possession of a firearm during the commission of a crime of violence in connection with Smith's death. On September 12, 2012, Detective Allen interviewed Callwood again and presented him with a photo array that included six men. Callwood selected Woodrup's photo, marked as photo number four in the array, identifying him as the shooter.

Prior to trial, Woodrup moved to suppress Callwood's identification, arguing that the procedure used to obtain the identification was unconstitutionally suggestive because "there was another officer in the room who may have been giving sign language to . . . Callwood," Callwood "was allowed to receive text messages" while reviewing the photo array, and because Callwood "said [that] possibly Number 2 or Number 4 was the shooter." The Superior Court held a suppression hearing on November 8, 2012, to determine the admissibility of

---

[1] This nickname was written as "Bombom" in the police report, but transcribed as "Boom Boom" in the trial transcript.

Callwood's identification. During this hearing, the People played a video recording of Callwood's September 12, 2012 identification, and Detective Allen testified to the procedure used to compile the photo array and Callwood's initial uncertainty in selecting a photo from it. Detective Allen stated that Callwood received a phone call while reviewing the photo array, and took out his phone to turn it off, but did not receive or send a text message. Finally, Detective Allen testified that he, another officer, and the victim's mother were in the room with Callwood while he examined the photo array, but that no one suggested that Callwood select a particular photo or otherwise influenced his decision.

At the close of the hearing, the Superior Court found that the procedures used in Callwood's identification were not suggestive and denied the motion to suppress. The Superior Court expressed concern with the fact that the victim's mother was in the room during the identification, but found that this·was not suggestive because the video revealed that there was no communication between her and Callwood during the identification. The Superior Court also found that the suggestion that Callwood's identification was influenced by the phone call he received was merely speculation because there was no evidence that he received a text message or that someone otherwise communicated with him.

Woodrup's three-day trial began on November 28, 2012. The People's first witness was Gumbs, who now insisted that she could not remember what happened on the night of the shooting. While she recalled that Smith was her boyfriend, she otherwise claimed not to remember that Smith was shot and said that she did not remember "anything that happened in 2010." When the People presented Gumbs with her earlier statements and her photo identification of Woodrup, she testified that she could not remember making the statements or the photo identification, but recognized her signature on each document. After the People's direct examination, Woodrup's counsel stated that he had no questions for Gumbs and did not cross-examine her.

The People then called Officer Daniel, Corporal Stout, and Detective Allen. Each officer testified to the statements they took from Gumbs after the shooting. The Superior Court admitted these four statements into evidence (the April 25, 2010 statement to Officer Daniel, the April 26, 2010 statement to Corporal Stout, and the two statements given to Detective Allen on May 13, 2010, and June 29, 2010) and allowed them

to be read to the jury over Woodrup's objections, purportedly to impeach Gumbs's testimony. The Superior Court also admitted the group photo in which Gumbs had circled Woodrup and identified him as the shooter.

The People then called Dr. Francisco Landron, who testified that he performed an autopsy on Smith and determined that Smith died from four gunshot wounds — two in the chest, one in the right buttocks, and one in the back of the right leg. Next, the People called Detective Karen Stout and Corporal Bernard Burke, who testified that a search of the firearm registry revealed that Woodrup did not have a license to possess a firearm in the Virgin Islands at the time of the shooting. Lastly, the People called two airline employees, who testified that at 5:01 a.m. on the morning after the shooting, a one-way ticket on a 6:50 a.m. flight to Atlanta, Georgia, was purchased for Woodrup from a ticket counter in Atlanta, and airline records confirmed that Woodrup was on this flight without any checked bags.

On November 29, 2010, after the People rested, Woodrup moved for a judgment of acquittal, which the Superior Court denied. Woodrup then called his siblings, Windell Lincoln, Roy Hansen, and Carolyn Hansen. Lincoln testified that on the day of the shooting, all four siblings went to the beach as a farewell to Woodrup, who planned to fly to Atlanta the next day for a job interview. According to Lincoln, after several hours at the beach, Woodrup and his other siblings went to the carnival village, where Lincoln received a call from his niece informing him that there had been a shooting at Pearson Gardens.

Roy Hansen also testified that Woodrup was with them at the beach, and later at the carnival village when they received word of the shooting. Carolyn Hansen testified that she was at Pearson Gardens when the shooting occurred and that she called emergency services and told the dispatcher that she saw four men in white shirts leaving the scene. She also testified that Woodrup only arrived after the shooting. After this testimony and that of two other witnesses, Woodrup rested and renewed his motion for a judgment of acquittal, which the Superior Court again denied. On the same day, the jury convicted Woodrup on all counts.

In a February 5, 2013 judgment and commitment, the Superior Court sentenced Woodrup to life imprisonment without parole for first-degree murder (which was merged with his convictions for second-degree murder, first-degree assault, and third-degree assault); a consecutive term of 25 years' imprisonment and a $25,000 fine for unauthorized possession

of a firearm during a crime of violence (which was merged with the other two unauthorized-possession convictions); and five years for first-degree reckless endangerment. Woodrup filed a timely notice of appeal on February 5, 2013.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). Because it embodies the adjudication óf the defendant's guilt and the sentences imposed, the Superior Court's February 5, 2013 judgment and commitment was a final judgment, and therefore we have jurisdiction over Woodrup's appeal. *Percival v. People*, 62 V.I. 477, 483 (V.I. 2015) (citing *Cascen v. People*, 60 V.I. 392, 400 (V.I. 2014)).

## III. DISCUSSION

### A. Sufficiency of the Evidence

■ Woodrup first argues that the evidence was insufficient to support his convictions. "[W]hen reviewing the sufficiency of the evidence, we review the Superior Court's determination *de novo*, applying the same standard the Superior Court should have applied — viewing the evidence in the light most favorable to the People." *Percival*, 62 V.I. at 484 (quoting *Webster v. People*, 60 V.I. 666, 678-79 (V.I. 2014)) (internal quotation marks and alterations omitted). Under this standard, we must "affirm[ ] the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

■ The People charged Woodrup with Smith's murder under 14 V.I.C. § 922(a)(1), which provides that "[a]ll murder which . . . is perpetrated by means of poison, lying in wait, torture, detonation of a bomb, or by any other kind of willful, deliberate and premeditated killing," constitutes first-degree murder. In order to obtain a conviction in a case "that does not involve poison, lying in wait, torture, or detonation of a bomb," the People must instead "prove the defendant (1) unlawfully killed another, (2) with malice aforethought, and (3) in a willful, deliberate, and premeditated manner." *Codrington v. People*, 57 V.I. 176, 184-85 (V.I. 2012) (citing *Brown v. People*, 54 V.I. 496, 505 (V.I. 2011)). Put another way, "first-degree murder requires both malice aforethought and proof that the defendant deliberated and reflected upon his decision to kill and

carried it out in cold blood." *Nicholas v. People*, 56 V.I. 718, 735 (V.I. 2012). Woodrup argues that the People failed to prove that he acted with premeditation in this case because "there [was] no showing of a calculated design" to commit murder. We disagree.

■ "[T]o premeditate a killing is [simply] to conceive the design or plan to kill." *Codrington*, 57 V.I. at 190. "It is not required . . . that the accused shall have brooded over his plan to kill or entertained it for any considerable period of time. . . . [A] brief moment of thought may be sufficient to form a fixed, deliberate design to kill." *Id.*; *Simmonds v. People*, 59 V.I. 480, 487 (V.I. 2013) (quoting *Brown*, 54 V.I. at 507). Woodrup is correct that the People offered no direct evidence that he acted with premeditation. "This is not fatal to [the People's] case, however, for it is often true that there is no direct evidence of a person's intent." *Ostalaza v. People*, 58 V.I. 531, 548 (V.I. 2013); *Phillip v. People*, 58 V.I. 569, 585 (V.I. 2013). Instead, "[p]remeditation can be demonstrated by circumstantial evidence, suggested by any number of factors." *Tyson v. People*, 59 V.I. 391, 401-02 (V.I. 2013). These factors can include "the nature of the weapon used, lack of provocation, the defendant's conduct before and after the killing, . . . evidence that the killing was done in a brutal manner, the nature and number of the victim's wounds, [and] the use of a deadly weapon upon an unarmed victim." *Nicholas*, 56 V.I. at 732 (quoting *Brown*, 54 V.I. at 506).

■■ Turning to the evidence in this case, it is clear that the People introduced sufficient evidence to allow the jury to conclude beyond a reasonable doubt that Woodrup committed premeditated murder. The Superior Court admitted the four statements Gumbs made to police describing the shooting, and Callwood testified to what he witnessed as well, stating that he had an unobstructed view of the shooting.[2] Both Gumbs and Callwood identified Woodrup as the shooter, and stated that Woodrup approached Smith, pulled out a handgun, and fired at least four bullets; first shooting Smith in the chest, then again in the leg as Smith turned to run, and "walked up to him and continued shooting while

---

[2] Woodrup argues that the evidence was insufficient because both of these identifications were erroneously admitted. But regardless of whether this evidence was properly admitted — issues we address later in this opinion — we consider all the evidence the jury had before it in evaluating the sufficiency of the evidence. *Cascen*, 60 V.I. at 409 (citing *Ambrose v. People*, 56 V.I. 99, 107 (V.I. 2012)); *Williams v. People*, 59 V.I. 1043, 1046 n.2 (V.I. 2013).

[Smith] was on the ground." Dr. Landron, the medical examiner who conducted an autopsy on Smith, corroborated this evidence by testifying that Smith was shot four times — twice in his chest, once in his right buttocks, and once in the back of his right leg — with the gunshots to the chest causing Smith's death.

■■ This evidence would allow a reasonable jury to conclude that Woodrup committed premeditated murder, since this evidence suggests that Woodrup approached Smith, fired at him with a handgun — an inherently deadly weapon[3] — and continued to shoot at him even as he fell to the ground. *See Simmonds*, 59 V.I. at 487 (sufficient evidence where the appellant shot the victim and then "moved towards him and shot at him again" after he fell); *Tyson*, 59 V.I. at 402 (sufficient evidence where the appellant aimed a gun out of his car window and shot the victim); *Ostalaza*, 58 V.I. at 549 (sufficient evidence where the appellant fired out of his car window at another vehicle); *Phillip*, 58 V.I. at 586 (same); *Codrington*, 57 V.I. at 189-90 (sufficient evidence where the appellant "left his car, walked toward [the victim] with a gun in hand, and shot [him] once"). And even though Woodrup does not argue that the evidence was insufficient to support a finding of malice aforethought, we note that the evidence was unquestionably sufficient to establish this element, as "the use of [a] gun alone could be sufficient for a finding of actual malice." *Nicholas*, 56 V.I. at 736.

■ This conclusion is not changed by the fact that Woodrup's siblings provided him with an alibi, since "an eyewitness identification is sufficient to support a conviction even if contradicted by the accused or by alibi testimony." *Percival*, 62 V.I. at 489 (quoting *Connor v. People*, 59 V.I. 286, 290-91 (V.I. 2013)) (internal quotation marks omitted); *accord Hughes v. People*, 59 V.I. 1015, 1019 (V.I. 2013) (the evidence "need not be inconsistent with every conclusion save that of guilt" (quoting *Mulley v. People*, 51 V.I. 404, 409 (V.I. 2009))).

■ Woodrup also attempts to challenge the sufficiency of the evidence by attacking "the very trustworthiness of Callwood's identification," and challenges Callwood's ability to make a positive identification because the windows of Callwood's car were tinted and the lighting outside was

---

[3] *See Connor v. People*, 59 V.I. 286, 295 (V.I. 2013) ("A firearm is a weapon that is calculated to produce death and serious bodily injury.").

poor. Woodrup further argues that the publication of his arrest and photo in the newspaper influenced Callwood's identification. But Woodrup failed to raise these issues at trial, and so they are waived on appeal. V.I.S.Ct.R. 4(h), 22(m). More importantly, these arguments go to Callwood's credibility and the weight the jury should have afforded his testimony — issues this Court will not review on appeal, "since a sufficiency challenge is not a vehicle to relitigate credibility arguments that were unpersuasive to the trier of fact." *Percival*, 62 V.I. at 488 (quoting *Webster*, 60 V.I. at 681)); *Billu v. People*, 57 V.I. 455, 466 (V.I. 2012). Accordingly, we have no trouble concluding that the evidence was sufficient for the jury to find beyond a reasonable doubt that Woodrup committed first-degree murder.

▮ Furthermore, this evidence was also sufficient to support Woodrup's convictions for second-degree murder, first-degree assault, and third-degree assault, which are all lesser-included offenses of first-degree murder. *Fontaine v. People*, 62 V.I. 643, 649 (V.I. 2015) (assault is a lesser-included offense of first-degree murder); *Williams v. People*, 56 V.I. 821, 826 (V.I. 2012) (second-degree murder is a lesser-included offense of first-degree murder). Since these crimes are lesser-included offenses of first-degree murder, Woodrup necessarily completed these offenses in carrying out the first-degree murder. *Tyson*, 59 V.I. at 403 n.8 ("[O]ur holding that the People introduced sufficient evidence to sustain [the first-degree murder] conviction . . . renders it unnecessary for us to review the sufficiency of the evidence of the assault conviction."); *Cascen*, 60 V.I. at 407 n.5.[4]

▮ ▮ The evidence indicating that Woodrup shot Smith several times, coupled with the evidence that Woodrup did not have a license to possess a firearm at the time of the shooting, is also sufficient to support his convictions for unauthorized possession of a firearm during a crime of violence under 14 V.I.C. § 2253(a). "[A]ll that is required for a conviction under section 2253(a) is evidence that the defendant had an unlicensed firearm in his possession during a crime of violence." *Percival*, 62 V.I. at

---

[4] Woodrup also argues that it is legally impossible to be convicted of both first-degree murder and first-degree assault when the victim dies. In *Phillip v. People*, 58 V.I. 569 (V.I. 2013), and *Simmonds v. People*, 59 V.I. 480 (V.I. 2013), we rejected this argument because there was evidence in each case to establish that the defendant committed a first-degree assault separate from the act required to convict for first-degree murder. *Phillip*, 58 V.I. at 592; *Simmonds*, 59 V.I. at 489. This case is no different.

489 (citing *Cascen*, 60 V.I. at 409). "[M]urder in any degree . . . assault in the first degree, assault in the second degree, [and] assault in the third degree" are all crimes of violence for the purposes of section 2253(a). 23 V.I.C. § 451(e); *see* 14 V.I.C. § 2253(d)(1) (providing that crimes of violence under section 2253 are those listed in section 451(e)); *see also Percival*, 62 V.I. at 489 (citing *Billu*, 57 V.I. at 468).

Finally, Woodrup argues that "[t]he evidence . . . cannot support a finding of recklessness" to support his conviction for first-degree reckless endangerment under 14 V.I.C. § 625(a). Essentially, he argues that since he was convicted of first-degree murder — the intentional killing of Smith — he cannot also be convicted of a crime where recklessness is the required mental state because his actions were intentional.

▆▆▆▆ "By its plain terms, section 625(a) requires only a showing that the conduct was done in a place that is open to the public or where the public has a right to be, thereby posing a risk of death to members of the public who may be in the area." *Cascen*, 60 V.I. at 408 (quoting *Tyson*, 59 V.I. at 417) (some alterations omitted). Here, those elements were satisfied by the testimony that Woodrup fired several gunshots on a public street populated by several members of the public — including Gumbs and Callwood. This is because the act of firing a loaded gun at or near someone "is, by definition . . . reckless conduct creating a grave risk of death under circumstances evincing an extreme indifference to human life." *Id.* (quoting *Augustine v. People*, 55 V.I. 678, 689 (V.I. 2011)); *Freeman v. People*, 61 V.I. 537, 542 (V.I. 2014); *Tyson*, 59 V.I. at 417.

▆▆▆ It makes no difference what Woodrup intended to do when he fired multiple gunshots in the Paul M. Pearson Gardens Housing Community — the act of firing a gun in "a place . . . visited by many persons and usually accessible to the public" is sufficient, standing alone, to support a conviction for reckless endangerment. *Estick v. People*, 62 V.I. 604, 615 (V.I. 2015) (the appellant's "conduct of firing gunshots is sufficient to prove a depraved indifference to human life, which creates a grave risk of death to another person") (citing *Phillip*, 58 V.I. at 591).

Accordingly, we reject Woodrup's challenge to the sufficiency of the evidence.

## B. Out-of-Court Identifications

Next, Woodrup challenges the Superior Court's admission of the out-of-court identifications made by Callwood and Gumbs on various grounds.

### 1. *Impermissibly suggestive identification procedures*

With regard to Callwood's out-of-court identification, Woodrup attempts to argue in scattered portions of his appellate brief that the identification procedures used were impermissibly suggestive in violation of his due-process rights. Woodrup moved to suppress Callwood's identification before trial on the same grounds, but the Superior Court denied this motion, finding that the identification procedures were not impermissibly suggestive. While this Court typically reviews the Superior Court's ruling on a motion to suppress for an abuse of discretion, *Percival*, 62 V.I. at 492 (citing *James v. People*, 60 V.I. 311, 317 (V.I. 2013)), the People contends that we should review this issue only for plain error because Woodrup failed to object to the admission of Callwood's identification at trial.

"As we have explained in recent cases, a party only needs to raise an issue in time for the Superior Court to address it and take whatever action is necessary in the first instance in order to fairly present the issue and preserve it for appeal." *Percival*, 62 V.I. at 486 (citing *Davis v. Varlack Ventures, Inc.*, 59 V.I. 229, 233 n.1 (V.I. 2013)) (applying V.I.S.CT.R. 4(h)). So while Woodrup did not object at trial to the admission of the photo array Callwood used to identify him and the video recording of Callwood's identification, Woodrup nonetheless preserved this issue under Supreme Court Rule 4(h) by filing a pretrial motion to suppress Callwood's out-of-court identification. Thus, a contemporaneous objection at trial was unnecessary to preserve this issue, and we decline the People's invitation to review this issue only for plain error simply because Woodrup failed to pointlessly reassert an objection the Superior Court had already rejected.

Yet Woodrup nonetheless waived this issue on appeal by inadequately briefing it. While this Court reviews the Superior Court's denial of Woodrup's suppression motion for an abuse of discretion, Woodrup fails to make any arguments suggesting that the Superior Court abused its discretion in finding that the identification procedures used in this case were not impermissibly suggestive. *See Percival*, 62 V.I. at 491-92; *accord Pedro v. Ranger Am. of the V.I., Inc.*, 63 V.I. 511, 521 n.6, (V.I. 2015) ("[T]his Court is one of review, not first instance."). In fact, he makes no reference to the Superior Court's decision at all, or to any of the evidence presented at the suppression hearing. *See* V.I.S.CT.R. 22(a)(5)

("The argument shall contain the contentions of the appellant with respect to each of the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on."). Because of these failings, Woodrup has waived his challenge to the admission of Callwood's identification. V.I.S.CT.R. 22(m) (issues raised "in a perfunctory manner or unsupported by argument and citation to legal authority" are waived).

With regard to Gumbs's out-of-court identification, Woodrup argues in passing that her identification was impermissibly suggestive, again without any citation to legal authority or the record, constituting waiver. V.I.S.CT.R. 22(m). Not only that, it is unclear whether Woodrup ever raised this issue before the Superior Court, since Gumbs's identification was not mentioned at the November 8, 2012 suppression hearing, and Woodrup fails to identify where in the record this issue was raised and decided by the Superior Court as required by this Court's rules. *See* V.I.S.CT.R. 22(a)(3) (the appellant's brief must "include a designation by reference to specific pages of the appendix or other specific documentation in the proceedings at which each issue on appeal was raised, objected to, and ruled upon"). So again, Woodrup has waived this issue. V.I.S.CT.R. 22(m).

## 2. *Evidentiary challenges*

■■■ Woodrup also insists that the Superior Court erred in admitting as substantive evidence the four statements Gumbs made to police.[5] The People responds that Gumbs's statements were properly admitted for the limited purpose of impeaching Gumbs's credibility, and asserts alternatively that any error was harmless. We review the Superior Court's

---

[5] Woodrup argues for the first time on appeal that the statements were unfairly prejudicial in violation of Federal Rule of Evidence 403. Not only did Woodrup fail to object to these statements on that ground at trial, this argument is so clearly meritless as to require little comment. "Because all probative evidence is prejudicial to a criminal defendant[,] to warrant exclusion its probative value must be slight in comparison to its inflammatory nature." *Billu v. People*, 57 V.I. 455, 465 (V.I. 2012) (quoting *Mulley v. People*, 51 V.I. 404, 412 (V.I. 2009)) (internal quotation marks and alterations omitted). Obviously, an eyewitness identification of the defendant committing the crime he is on trial for is relevant to a criminal prosecution, and Woodrup makes no suggestion that this evidence involved anything of "an inflammatory nature that would cause the factfinder to find guilt on an impermissible ground." *Id.*

decision to admit evidence for an abuse of discretion, but if that decision was based on a legal conclusion, our review is plenary. *Simmonds*, 59 V.I. at 485-86.

At trial, the People moved to admit the four statements Gumbs made to police after the shooting, claiming it was doing so to impeach Gumbs, who testified that she did not remember the contents of her statements and did not remember identifying Woodrup as the shooter. The Superior Court admitted each statement over Woodrup's objections, and allowed the three police officers who took these statements to read them to the jury.

██ On appeal, Woodrup asserts the People used these statements as substantive evidence. We agree. Despite the People's contention that these statements were admitted only as impeachment evidence, the Superior Court never gave a limiting instruction cautioning the jury to consider the statements only for their impeachment value. Worse still for the People's position, the Superior Court explicitly told the jury in its final instructions that "[u]nder Virgin Islands law earlier inconsistent statements are admissible in criminal trials not only to impeach the credibility of the witness but also to establish the truth of contradictory statements made before trial," and that the jury "may use that evidence to help [it] decide whether to believe the testimony of the witness or the earlier statements, and how much weight to give to each." *See Frett v. People*, 58 V.I. 492, 508 (V.I. 2013) ("had the statement been properly used solely for impeachment, the court would have provided a limiting instruction, informing the jury that [it] could not use the statement" as evidence of the defendant's guilt).

██ Although never cited by the Superior Court, it is clear that the Superior Court relied on former 14 V.I.C. § 19 (repealed 2010) when it instructed the jury that it could use the statements as substantive evidence. Section 19 provided that "[e]vidence of a prior statement . . . shall be admissible for the purpose of affecting the credibility of the witness or for proving the truth of the matter asserted therein if it would have been admissible if made by the witness at the hearing or trial."[6] While this

---

[6] Former 14 V.I.C. § 19 provided in full:

> Evidence of a prior statement, oral or written, made by a witness is not made inadmissible by the hearsay rule if the prior statement is inconsistent with his testimony at a hearing or trial. After the witness has been given an opportunity at such hearing or trial to explain or deny the prior statement, the court shall allow either party to prove that the

appeal was pending, this Court explained that the Legislature implicitly repealed section 19 when it adopted the Federal Rules of Evidence to govern the admission of evidence in the Superior Court through section 15(b) of Act No. 7161 on April 7, 2010. *Simmonds*, 59 V.I. at 502.

 Although this Court had yet to clarify that the Federal Rules of Evidence apply to the exclusion of section 19 at the time of Woodrup's trial — meaning that the Superior Court's instruction did not conflict with this Court's precedent as it stood at that time — the admission of these statements as substantive evidence in reliance on section 19 still constituted error. Regardless of "whether [this] legal question was settled or unsettled at the time of [the trial proceedings]," it is enough that the issue was subsequently resolved while the appeal was pending. *Williams v. People*, 59 V.I. 1043, 1047 n.4 (V.I. 2013).

 Despite the Superior Court's error, we will not reverse if that error was ultimately harmless. V.I.S.Ct.R. 4(i). In the context of evidence admitted in reliance on former 14 V.I.C. § 19, the error would be harmless if the evidence was otherwise admissible under the Federal Rules of Evidence. Relying on this Court's decision in *Simmonds*, Woodrup argues that Gumbs's out-of-court statements were not otherwise admissible. In *Simmonds*, this Court held that the Legislature implicitly repealed section 19 when it adopted Federal Rule of Evidence 801(d)(1)(A) because "section 19 and Rule 801(d)(1)(A) are equally specific" in addressing the admission of prior inconsistent statements, and "are also in irreconcilable conflict," meaning that "the rules of statutory construction dictate that Rule 801(d)(1)(A), as the most recent enactment, controls." 59 V.I. at 501. Rule 801(d)(1)(A) provides that in order for a prior inconsistent statement to be admitted as substantive evidence, it must have been "given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." None of Gumbs's unsworn out-of-court statements to police met those requirements, and therefore they were not admissible as substantive evidence under Rule 801(d)(1)(A). *Canton v. People*, 61 V.I.

---

witness has made a prior statement, oral or written, inconsistent with his sworn testimony. Such prior statement shall be admissible for the purpose of affecting the credibility of the witness or for proving the truth of the matter asserted therein if it would have been admissible if made by the witness at the hearing or trial. Each party shall be allowed to cross-examine the witness on the subject matter of his current testimony and the prior statement.

511, 519 (V.I. 2014); *Williams*, 59 V.I. at 1047-49; *Simmonds*, 59 V.I. at 502.

But, as the People points out in its appellate brief, Gumbs's June 29, 2010 statement to police identifying Woodrup as the shooter from a photograph was admissible as a prior identification under Federal Rule of Evidence 801(d)(1)(C). This rule provides that a statement is not hearsay — and is therefore admissible at trial for all purposes — where "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . identifies a person as someone the declarant perceived earlier." FED. R. EVID. 801(d)(1)(C).[7] These requirements were satisfied here with regard to the June 29, 2010 statement since Gumbs testified at trial, was subject to cross-examination, and that statement identified Woodrup as the shooter from a photograph shown to her by police.

 This remains true despite the fact that Gumbs testified that she could not remember making that identification and could not identify Woodrup in court. Indeed, "Rule 801(d)(1)(C) was in part directed to the very problem at issue here: a memory loss that makes it impossible for the witness to provide an in-court identification or testify about details of the events underlying an earlier identification." *United States v. Owens*, 484 U.S. 554, 562-63, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988). "Congress enacted the provision to remedy two perceived problems: (1) the typical situation where the witness's memory no longer permits a current identification and he therefore can only testify as to his previous identification; and (2) the instance where before trial the witness identifies

---

[7] This Court and the Superior Court "recently questioned whether the Legislature intended to adopt the Federal Rules of Evidence as they existed at the time Act No. 7161 became law on April 7, 2010, or as later amended after this date as well." *V.I. Waste Mgmt. Auth. v. Bovoni Invs., LLC*, 61 V.I. 355, 368 n.13 (V.I. 2014) (citing *People v. Ventura*, Super. Ct. Crim. No. 76/2012 (STX), 2014 V.I. LEXIS 53, *22 n.4 (V.I. Super. Ct. July 25, 2014) (unpublished)); *see also Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 580 (V.I. 2015). Although the language quoted above is from the current version of the rule after it was amended in 2011, that amendment was merely stylistic, and so we do not address here whether a post-2010 substantive change to the Federal Rules of Evidence would apply in the Superior Court by virtue of Act No. 7161. FED. R. EVID. 801 Advisory Committee Notes (2011) ("The language of Rule 801 has been amended as part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.").

the defendant and then because of fear refuses to acknowledge his previous identification." *United States v. Elemy*, 656 F.2d 507, 508 (9th Cir. 1981); *see also United States v. Lewis*, 565 F.2d 1248, 1252 (2d Cir. 1977) ("It seems clear both from the text and the legislative history of the amended Rule that testimony concerning extra-judicial identifications is admissible regardless of whether there has been an accurate in-court identification."). "The reasons for admitting identification statements as substantive evidence are that out-of-court identifications are believed to be more reliable than those made under the suggestive conditions prevailing at trial, and the availability of the declarant for cross-examination eliminates the major danger of hearsay testimony." *Elemy*, 656 F.2d at 508; *see also United States v. O'Malley*, 796 F.2d 891, 899 (7th Cir. 1986) ("Nothing in this rule prohibits the introduction of out-of-court statements identifying the defendant made by the declarant who at trial . . . denies that the defendant was . . . involved in the crime."). Accordingly, Gumbs's prior statement identifying Woodrup as the shooter from a photograph was admissible as substantive evidence at trial.

 Woodrup also argues that the admission of this prior identification violated his right to confront Gumbs because she testified that she did not remember making the statement, preventing Woodrup from cross-examining her regarding it. This concern is without merit. Aside from the fact that Woodrup waived his right to cross-examine Gumbs here, *see Percival*, 62 V.I. at 490 n.3, the United States Supreme Court expressly rejected this exact argument in *Owens*, explaining that "[i]t is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even . . . the very fact that he has a bad memory." 484 U.S. at 559. This is because "the Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *George v. People*, 59 V.I. 368, 380-82 (V.I. 2013) (quoting *Owens*, 484 U.S. at 559-60) (emphasis in original) (internal quotation marks and alteration omitted); *see also United States v. Keeter*, 130 F.3d 297, 302 (7th Cir. 1997) ("The Supreme Court's point [in *Owens*] was that the confrontation clause (and the rule) are satisfied when the witness must look the accused in the eye in court; shortcomings in the declarant's memory may be made known to the jury.").

717

██ Further, "[s]o long as the requirements of Rule 801(d)(1)(C) are met, government agents may testify about a prior statement of identification made by a witness who 'identified the defendant in a lineup or photospread, but forgets, or changes, his testimony at trial.' " *United States v. Foster*, 652 F.3d 776, 788-89 (7th Cir. 2011) (quoting *United States v. Brink*, 39 F.3d 419, 426 (3d Cir. 1994)); *see also United States v. Cueto*, 611 F.2d 1056, 1063 (5th Cir. 1980) (a law enforcement agent's "statement that the defendant was the person portrayed in the photograph that the witness identified is also permissible" under Rule 801(d)(1)(C)); *O'Malley*, 796 F.2d at 898-99 (same). As such, Detective Allen's testimony regarding the June 29, 2010 statement was also admissible under Rule 801(d)(1)(C), in addition to the statement itself.

 But the hearsay exemption for prior identifications does not extend to the earlier statement Gumbs gave to Detective Allen, or the two statements she gave to Officer Daniel and Corporal Stout. In the April 25, 2010 statement to Officer Daniel, Gumbs simply provided a description of the shooter and could not identify him; in the April 26, 2010 statement to Corporal Stout, Gumbs recounted the events of the shooting but did not provide any information on the shooter; and in the May 13, 2010 statement, Gumbs recounted much of the information given in the earlier statements, adding that she knew the shooter's nicknames to be "Maka" and "Bombom." Unlike the later statement, she did not identify Woodrup in a photograph, and so these statements are not admissible as prior identifications under Rule 801(d)(1)(C). Instead, in order for these earlier statements to be admissible, they must satisfy the more stringent criteria for prior inconsistent statements, which require that the statement be "given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." FED. R. EVID. 801(d)(1)(A). Because these statements were merely unsworn statements to police, they clearly do not meet these requirements. Therefore, they were not admissible as substantive evidence at trial, nor was the testimony from Officer Daniel, Corporal Stout, and Detective Allen recounting the contents of those statements. *Simmonds*, 59 V.I. at 502; *Canton*, 61 V.I. at 518; *Williams*, 59 V.I. at 1048-49.[8] Significantly, even if the Superior Court had instructed the jury to consider these statements only as impeachment evidence, it still would

---

[8] Some of the statements at issue in *Williams* involved out-of-court identifications made by witnesses after examining a photo array, and so they may have satisfied the requirements of

have been error, since "courts have consistently held that prosecutors may not call a witness for the sole purpose of impeaching [her] with . . . evidence" that is inadmissible as substantive evidence. *Simmonds*, 59 V.I. at 502 n.12.

■■ Nor are we convinced by the People's alternative argument that these statements were admissible under the residual exception to the rule against hearsay found in Federal Rule of Evidence 807. Rule 807 provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception" if "the statement has equivalent circumstantial guarantees of trustworthiness," among other considerations. FED. R. EVID. 807(a). But the People concedes that it failed to give notice to Woodrup that it intended to introduce these statements under the residual exception as required by Rule 807(b), and the "open access" to its files the People claims it gave Woodrup is not sufficient to satisfy the notice requirement. *See United States v. Pelullo*, 964 F.2d 193, 202 (3d Cir. 1992) (evidence was not admissible under the residual exception where "the Government conceded that it did not notify [the defendant] that it intended to rely on the residual exception to the hearsay rule for admission of the documents").

■ Yet the Superior Court's error in admitting the three statements given on April 25, 2010, April 26, 2010, and May 13, 2010, does not require reversal. When the Superior Court commits an evidentiary error — as opposed to a constitutional error — that error "is harmless if, after reviewing the entire record, [we] determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *Thomas v. People*, 63 V.I. 595, 609 (V.I. 2015) (quoting *Frett*, 58 V.I. at 506) (alteration omitted); *see also Fahie v. People*, 59 V.I. 505, 511 (V.I. 2013) ("To affect . . . substantial rights, the error must [have] affected the outcome of the trial."). It is clear here that the admission of these statements "had only a slight influence on the verdict," if any at all. The April 25, 2010 statement to Officer Daniel gave only a vague description of the shooter and did not identify Woodrup

Rule 801(d)(1)(C). *See Williams*, 59 V.I. at 1045. But in that case — just as in *Simmonds* and *Canton* — the People argued only that those statements were admissible as prior inconsistent statements under section 19, without ever asserting that they were admissible as prior identifications under Rule 801(d)(1)(C).

719

at all, and the May 13, 2010 statement to Detective Allen added that Gumbs knew the shooter's nickname. Any probative value these statements had in this case was entirely eclipsed by Gumbs's admissible statement identifying Woodrup as the shooter and Callwood's in-court and out-of-court identifications of Woodrup as the shooter. The April 26, 2010 statement to Corporal Stout simply repeated some aspects of the earlier statement, but did not include a description of the shooter, and so it was not probative on that issue at all. *Thomas*, 63 V.I. at 610 (the erroneous admission of evidence is harmless where it "adds very little to the probative force of the other evidence in the case").

Accordingly, while the Superior Court erred in relying on former 14 V.I.C. § 19 to admit Gumbs's four out-of-court statements as substantive evidence in this case, this was harmless with regard to the June 29, 2010 statement because it was otherwise admissible as a prior identification. This error was also harmless with regard to the April 2010 statements and the May 2010 statement because, even though they were not otherwise admissible, they had little, if any, effect on the verdict.

## C. Caution-and-Care Instruction

Woodrup also argues that the Superior Court erred when it failed to give the specific cautionary instruction regarding the jury's use and interpretation of eyewitness testimony we mandated in *Ostalaza*, 58 V.I. at 559-63. Although we usually review the Superior Court's jury instructions for an abuse of discretion, Woodrup failed to request the jury instruction at issue in this case, and so we review only for plain error. V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal."). "Under plain error review, there must be an error, that was plain, that affected the defendant's substantial rights." *Webster*, 60 V.I. at 672 (quoting *Cascen*, 60 V.I. at 413). "Even then, this Court will only reverse where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

In *Ostalaza*, we held that the Superior Court must give a caution-and-care instruction — urging the jury to "receive the identification testimony with caution and scrutinize it with care" — if the identification does not satisfy all four of the following factors: "1) the witness had the opportunity to observe the accused; 2) the witness is positive in his

identification; 3) the witness's identification testimony is not weakened by a prior failure to identify or by prior inconsistent identification; and 4) after cross-examination, his testimony remains positive and unqualified." 58 V.I. at 562 (internal quotation marks, citation, and alteration omitted).

██ In this case, even though the Superior Court did not use the exact phrase "receive the identification testimony with caution and scrutinize it with care," the court nonetheless urged the jury to examine any identification "with great care" based on the four *Ostalaza* factors. Specifically, the Superior Court told the jury to consider "whether the witness . . . had an adequate opportunity to observe the person who committed the crimes charged," whether "the witness' identification testimony is positive and unqualified," "whether the witness failed to identify Caba Woodrup at any time, identified someone [else] as the person who committed the crime, or changed his or her mind about the identification at any time," and "whether the witness is positive in the identification and whether the witness' testimony remains positive and unqualified after cross examination."

Given that the Superior Court's instruction in this case was extensive and detailed, and tracked the instruction we mandated in *Ostalaza*, the Superior Court did not commit error — let alone plain error — even if it did not use the exact language we did in that decision. *Ostalaza*, 58 V.I. at 561 (no error where "the trial court's instruction used different language, [but] it covered the substance of the requested instruction"); *Fahie v. People*, 62 V.I. 625, 640 (V.I. 2015) (no plain error where "the trial court did not emphasize that [the] testimony [of an accomplice] should be given 'great care and caution' in those exact words, [but nonetheless] did inform the jury that they should 'examine his testimony with caution' ").

### D. Sentencing

Finally, Woodrup argues that 14 V.I.C. § 2253(a) — requiring that the penalty imposed for the unauthorized possession of a firearm during the commission of a crime of violence be "in addition to the penalty provided for the commission of . . . the felony or crime of violence" — violates the Supremacy Clause of the United States Constitution, providing that "the judges in every state shall be bound" by the Constitution and federal law. This argument is entirely frivolous.

■ Because the Virgin Islands is not a state, "the Supremacy Clause has no direct role in a conflict between federal law and territorial law." *Bryan v. Fawkes,* 61 V.I. 416, 438 n.5 (V.I. 2014) (internal quotation marks and citation omitted). Instead, "limitations on the power of state governments found in the United States Constitution do not apply to territorial governments, given that territorial governments exercise authority that has been delegated by Congress under Article IV" of the United States Constitution. *Id.* at 438 n.5 (collecting cases). Indeed, it appears that Woodrup raises his supremacy argument simply to assert that section 2253(a) violates the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, which does apply to the Virgin Islands by virtue of section 3 of the Revised Organic Act of 1954. 48 U.S.C. § 1561; *Estick,* 62 V.I. at 620 n.8.

■ But this Court has already considered and rejected this same argument with regard to an identical provision found in 14 V.I.C. § 2251(a)(2)(B). That section, like section 2253(a), provides that the penalty for using a dangerous weapon during a crime of violence "shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence." In *Ward v. People,* 58 V.I. 277, 282-86 (V.I. 2013), this Court held that because the language of section 2251(a)(2)(B) constituted an express authorization for multiple penalties by the Virgin Islands Legislature, it does not violate double jeopardy. And as we have already explained, this reasoning applies with equal force to the identical provision found in section 2253(a). *Williams v. People,* 58 V.I. 341, 351 (V.I. 2013) ("[T]his Court has recently fully addressed — and rejected — these identical arguments on the merits [in *Ward*], and Williams has provided us with no grounds to cause us to revisit our decision."); *Fontaine,* 62 V.I. at 654.

■ ■ Similarly, Woodrup's argument that the Superior Court violated 14 V.I.C. § 104[9] by imposing a sentence for both first-degree murder and reckless endangerment is foreclosed by precedent. *Phillip,*

---

[9] Section 104 "provides that notwithstanding the fact that an individual can be charged and convicted of violating multiple provisions of the Virgin Islands Code, an individual may only be punished for one of the offenses arising out of a single act." *Estick,* 62 V.I. at 622-23 (citing *Williams v. People,* 56 V.I. 821, 832-34 (V.I. 2012)). This requires the Superior Court to "announce a sentence for each offense and then stay execution of the sentences in which section 104 is implicated." *Rawlins v. People,* 61 V.I. 593, 614 n.13 (V.I. 2014) (quoting *Williams,* 58 V.I. at 354 n.10) (internal quotation marks and alteration omitted).

58 V.I. at 594 ("the multiple-victim exception permits us to affirm [the appellant's] sentences for first-degree murder and first-degree reckless endangerment" because "he committed a single act of violence that harmed or risked harming more than one person"); *Thomas v. People*, 60 V.I. 183, 201-02 (V.I. 2013). Accordingly, we reject these arguments.

## IV. CONCLUSION

The evidence was sufficient to support Woodrup's convictions. Further, Woodrup waived his argument that the procedures used to obtain identifications from Gumbs and Callwood were impermissibly suggestive. And while Woodrup is correct that the Superior Court erred in relying on former 14 V.I.C. § 19 to admit Gumbs's prior statements to police as substantive evidence at trial, this error was harmless with regard to Gumbs's identification of Woodrup, since that statement was admissible as a prior identification. This error was also harmless with regard to the other statements Gumbs gave to police because, even though they were not otherwise admissible, they did not affect the verdict. Finally, this Court's precedent forecloses Woodrup's arguments challenging his sentence. We accordingly affirm Woodrup's convictions.